******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ESPINOSA, J., concurring in part. I agree with and join part I of the majority opinion, which concludes that the trial court properly instructed the jury on the subjective belief required by the defendant, Latasha R. O'Bryan, under our self-defense law, and that the judgment of conviction should be affirmed. I write separately, however, because although I agree with the majority's ultimate conclusion in part II that the defendant was not deprived of a fair trial, I disagree with its analysis. Specifically, I disagree with the majority that the court's instruction on combat by agreement was correct and I conclude that, upon a finding of a combat by agreement, self-defense is unavailable to the defendant without qualification. I further conclude that this error in the instruction benefited the defendant because it allowed her to rely on a self-defense theory despite a finding of a combat by agreement. Because I conclude that self-defense is unavailable in a combat by agreement, I do not need to reach the two issues raised by the defendant as to the combat by agreement jury instruction.

In determining whether General Statutes § 53a-19 (c) (3) is ambiguous, I note that "[t]he process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case . . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *State* v. *Kalil*, 314 Conn. 529, 557–58, 107 A.3d 343 (2014).

"It is well established that we cannot accomplish a result that is contrary to the intent of the legislature as expressed in the [statute's] plain language. . . . As we recently have reiterated, a court must construe a statute as written. . . . Courts may not by construction supply omissions . . . *or add exceptions* merely because it appears that good reasons exist for adding them. . . . The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a

function of the legislature." (Emphasis added; internal quotation marks omitted.) *State* v. *Singleton*, 292 Conn. 734, 765–66, 974 A.2d 679 (2009).

As directed by § 1-2z, we begin with the statutory language. Section 53a-19 (c) provides in relevant part that the defense of self-defense is not available to justify the use of physical force "when . . . (3) the physical force involved was the product of a combat by agreement not specifically authorized by law." "The agreement required by [this provision] need not be formal or express." *State* v. *Silveira*, 198 Conn. 454, 471, 503 A.2d 599 (1986); id. (upholding combat by agreement instruction when there was evidence that defendant and his companions went to assist friends who were in trouble, which resulted in altercation with individual who then left and returned with his own group and fight broke out between two groups); see also *State* v. *Montanez*, 277 Conn. 735, 747–48, 894 A.2d 928 (2006) (upholding combat by agreement instruction when defendant's friend urged another individual to fight with defendant and that individual then returned with his brother who offered to fight defendant's friend " 'man-to-man' "). The jury is permitted to infer "an implicit agreement to fight from the evidence" presented. *State* v. *Montanez*, supra, 747.

In reviewing the language of § 53a-19 (c) (3), I conclude that it is plain and unambiguous. The text does not provide for any exceptions to its rule that self-defense is unavailable to parties to a combat by agreement. That is, the plain language of the statute categorically excludes self-defense as a justification for the use of physical force when a party has engaged in a combat by agreement. As the plain meaning of § 53a-19 (c) (3) makes clear, the majority incorrectly concludes that a defendant may claim self-defense despite a finding of a combat by agreement. The court's instruction provided that if the victim violated the terms of the agreement and escalated the level of force beyond what the two combatants had agreed on, and if the defendant knew that the victim had done so, self-defense may still be available to the defendant. This instruction conflicts with the statute, which clearly prohibits the use of self-defense in a combat by agreement. See General Statutes § 53a-19 (c) (3).

Moreover, when I compare the text of § 53a-19 (c) (3), the combat by agreement exception to self-defense, with the text of § 53a-19 (c) (2), the initial aggressor exception to self-defense, the absence of any language in subdivision (3) indicating that a defendant may justify the use of physical force in a combat by agreement further compels the conclusion that subdivision (3) does not allow a defendant to rely on a claim of self-defense in a combat by agreement. "Under well established rules of statutory construction, [w]here a statute, with reference to one subject contains a given provi-

sion, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." (Internal quotation marks omitted.) *State* v. *B.B.*, 300 Conn. 748, 759, 17 A.3d 30 (2011). Subdivision (2) of § 53a-19 (c) explicitly includes a provision allowing the initial aggressor to justify the use of physical force upon another person "if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force . . . ." Subdivision (3) of § 53a-19 (c) contains no such additional provision. The majority claims that it is "bizarre" that an initial aggressor would be able to use self-defense, but a combatant to an agreement to fight would not. However "bizarre" it might seem to the majority, the legislature must not have found it so or it would not have included a specific exception allowing for self-defense in the initial aggressor provision and then left such an exception out of the combat by agreement provision.

In reaching its conclusion that self-defense is available to a combatant in a combat by agreement, the majority applies a common-law gloss on the plain language of § 53a-19 (c) (3), stating that "the drafters of § 53a-19 emphasized that the justification defenses generally attempt to restate the common law." (Internal quotation marks omitted.) This approach seems inconsistent with the one taken in *State* v. *Singleton*, supra, 292 Conn. 764–66, in which this court rejected the defendant's claim that common-law principles permitted him, as the initial aggressor, to use deadly force without withdrawal when he initially used nondeadly force but the other party escalated the force. In that case, this court concluded that the language of § 53a-19 (c) (2) was plain and unambiguous. Id., 765. The common-law principles that would have allowed for such an exception to the initial aggressor exception to self-defense did not benefit the defendant in that case. Id., 764–65. Instead, the court concluded that any such exception would have to be expressly added to the statute by the legislature. Id., 766. Query then how the majority in the present case can use common-law principles to find an exception not explicitly written in this provision of the same statute when a party to a combat by agreement escalates the level of violence.

In its interpretation of the combat by agreement statute, the majority incorrectly characterizes the agreement that combatants establish. In a combat by agreement, the agreement is to engage in a fight; the agreement is not to the *terms* of the fight. See *State* v. *Montanez*, supra, 277 Conn. 747 ("jury instruction regarding the 'combat by agreement' exception to self-defense is warranted when the evidence is 'sufficient to support a reasonable inference' that . . . a mutual combat occurred"). A combat by agreement is a mutual

combat: a mutual decision by two or more parties to engage in combat. Combat by agreement is not pugilism; it is an illegal activity, with each individual in the fight being subject to a charge of at least attempt to commit assault in the third degree. See General Statutes §§ 53a-49 (a) (2) and 53a-61 (a). Providing a combatant to such a fight with the right to claim self-defense, grants that individual the ability to avoid criminal liability using a legal justification to an illegal act—an illegal act into which she voluntarily entered.

Furthermore, it is unrealistic to assume, as the majority does, that the combatants to a fight establish terms prior to the commencement of the fight. This assumption is contrary to our previous decisions. See, e.g., *State* v. *Montanez*, supra, 277 Conn. 747–48; *State* v. *Silveira*, supra, 198 Conn. 471. The majority implies that combatants establish "contracts" before engaging in their fight. Given that fights develop without advanced planning, and that we can find combat by agreement even without any express agreement to fight, it seems unlikely that the parties would establish specific terms, including the level of force to be used, prior to the commencement of the fight. Even in the present case, where there was testimony that the defendant and the victim had agreed to engage in a "fair one," defined by witnesses as a fight without weapons, the parties do not agree that that happened. The defendant claimed at trial that she was simply assaulted and never agreed to fight at all, and, therefore, certainly never agreed to the particular level of force to be used.

Accordingly, I concur.