STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert W. BOUGNEIT, Defendant-Appellant.†

Court of Appeals

*No. 79–556–CR.   Argued November 29, 1979.—
Decided May 27, 1980.*
(Also reported in 294 N.W.2d 675).

† Petition to review denied.

For the defendent-appellant, there was a brief and oral argument by *Roland J. Steinle, III* of *Gerald P. Boyle, S.C.* of Milwaukee.

For the plaintiff-respondent, there was a brief submitted by *Bronson C. La Follette,* attorney general, and *Sally L. Wellman,* assistant attorney general. Oral argument by *Sally L. Wellman.*

Before Voss, P.J., Brown and Bode, J.J.

BROWN, J.   Robert W. Bougneit appeals from an attempted first-degree murder conviction.  At trial, Bougneit claimed he intended to frighten his victim by a near miss, but the victim moved his body into the line of fire and was shot.  At trial, he asked for the mistake of fact instruction, arguing that he misjudged the position of the victim.  The trial judge refused to give the mistake of fact instruction.  Because we hold the evidence does not raise a mistake of fact question, we affirm the trial court.  Issues regarding an instruction on the loss of self-defense when the defendant is the aggressor, sufficiency of evidence, and alleged improper arguments by the prosecutor are also addressed.

On the evening of the altercation, Bougneit was sitting in a Kenosha restaurant.  He harassed customers

and waitresses in the restaurant, made noises like a dog and was generally loud and obnoxious. The victim, Robert Fick, entered the restaurant accompanied by two women. As the trio passed by the booth Bougneit was sitting in, he barked like a dog and made a movement as if to grab the rear of one of the women. He then made several sexual comments to the ladies. Fick demanded an apology from Bougneit. Bougneit replied, "[y]ou think you're big enough to make me," and said "let's go outside." The busboy intervened and requested the men to go outside.

Bougneit went outside and Fick followed. Bougneit hurried directly to his truck which was parked nearby. After opening the passenger door to the truck, Bougneit went to the other side of the truck and opened the driver's door. While Bougneit was on the other side of the truck, Fick reached through the passenger side and removed the ignition keys, throwing them to the floor. Then Fick walked to the rear of the truck. Bougneit did not follow but instead pulled a shotgun from the truck and aimed it directly at Fick. When Fick saw that Bougneit was pointing a shotgun toward him, he stopped and put his hands out in front of him. Bougneit then fired two shots above Fick's head. After the second shot, Fick moved toward the restaurant. Bougneit then said, "I'm going to blow your f——— brains out." After making that statement, he fired a third shot from a distance of six feet striking Fick in the face. Bougneit left in his truck after threatening the busboy with the same fate as had befallen Fick.

Bougneit states that his use of the shotgun was an act of self-defense in an attempt to repel an advancing Fick, who was much larger than he. He claims that he did not intend to hit Fick but fired only in an attempt to scare him. Bougneit maintains that he fired the third shot in a direction he thought would miss Fick and that

this third shot struck Fick because Fick suddenly moved into the line of fire. Bougneit further claims that had he known Fick's actual position when the shot was fired, he would not have fired in the direction he did. Bougneit argues that his blast struck Fick because of his mistake of fact as to Fick's actual position.

Based on this evidence, Bougneit requested an instruction on mistake which incorporates sec. 939.43(1), Stats., which states:

An honest error, whether of fact or of law other than criminal law, is a defense if it negatives the existence of a state of mind essential to the crime.

Bougneit claims that his story is a reasonable construction of the evidence and supports his theory that the mistake of fact instruction should have been given.[1] He cites *State v. Mendoza*, 80 Wis.2d 122, 258 N.W.2d 260 (1977), for the proposition that when there is any evidence to support a theory of defense, then that instruction on theory of defense must be given. In particular, he quotes the following from *Mendoza*:

Thus the question before us, as it was by law before the trial court, is not what the "totality of the evidence" reveals but rather, whether a reasonable construction of the evidence will support the defendant's theory "viewed in the favorable light it will 'reasonably admit from the standpoint of the accused.'" . . . If this question is answered affirmatively, then it is for the jury, not for the

---

[1] The defense of mistake is often difficult to apply to a particular fact situation. There is a paucity of cases in this nation which involve this defense, and there are no Wisconsin cases which discuss the substantive law of the defense of mistake except for *Welch v. State*, 145 Wis. 86, 129 N.W. 656 (1911), which is discussed in a later footnote. We are not dealing with an act which may be either witnessed and described when performed, or judged by results and after-effects. Rather, we are concerned with an intangible, valuation of the mind and thinking process existent at the time the acts were performed.

trial court or this court, to determine whether to believe defendant's version of events. [Citations omitted.] *Mendoza, supra,* at 153, 258 N.W.2d at 273.

The unifying principle behind the mistake of fact defense is that no person should be subjected to criminal punishment where intent is necessary to constitute an offense, unless that person has performed a voluntary act while possessing a guilty mind or *mens rea*.[2] There can be no crime when the criminal mind or intent is wanting. Whether the defendant has the requisite intent depends on his state of mind. There are subjective and objective methods of determining a defendant's intent. In the subjective approach, the defendant's state of mind depends on his impression of the facts. If according to the defendant's perception of the facts, his act is criminal, he has the criminal mind and should be punished. If, on the other hand, his act would be innocent provided the facts were as he perceived them to be, he does not have the criminal mind and consequently should not be punished for his act.[3]

In the subjective approach, the defendant's guilt or innocence is determined by what he actually thought or perceived. Thus, if a person is mistaken in his perception of the facts and performs an act based on this misperception, he cannot be guilty of a crime because his mental impressions make it impossible to have formed a criminal intent.

The objective approach, which asks what a reasonable man would have thought or perceived, has been specifically rejected by the legislature. It does not matter, therefore, whether a person's mistake is reasonable, only

[2] Brinig, *The Mistake of Fact Defense and The Reasonableness Requirement,* 2 GMU. L. Rev., 209 (1978).

[3] Keedy, *Ignorance and Mistake in the Criminal Law,* 22 Harv. L. Rev. 75, 82 (1908).

that it is an honest mistake. As stated in 5 Wisconsin Legislative Council Reports, 36 (1953):

The claim of mistake must of course be honest rather than spurious. The use of the term "honest error" in the section is merely for the purpose of emphasizing that point. *However, if the mistake is real and it negatives a state of mind essential to the crime, the actor is entitled to the defense even though the mistake is unreasonable.* It may be difficult for a defendant to raise a reasonable doubt that his mistake was real if it appears to be unreasonable, but this is a problem of proof and not a matter of substantive law.[4] [Emphasis added.]

A mistake of fact situation is best illustrated by example. If a man takes another's umbrella out of a restaurant because he mistakenly believes the umbrella is his, it is a mistake in the actor's perception of the facts. His mistake negatives the intent because the actor does not know the umbrella belonged to another. When the actor takes the umbrella, he does so under a complete mistake of the facts as they actually exist. If the facts

---

[4] In *Welch v. State*, 145 Wis. 86, 129 N.W. 656 (1911), the court seemed to hold that an objective "reasonable" mistake standard prevailed, and the state was in effect required only to prove, beyond a reasonable doubt, that: (1) The harm done was caused by the defendant's voluntary act, and (2) *A reasonable man would not have thought things* were as the defendant alleges he thought them to be. *Welch* placed upon the defendant the burden of showing not only that the error was honest, but that it was without negligence and while exercising due care. In our view, this is the same as requiring an objective standard. *Welch* was impliedly overruled by the new statute as evidenced by 5 Wisconsin Legislative Council Reports, 35–36 (1953).

Moreover, the objective standard of reasonableness may be unconstitutional. The prosecutor's burden of proof in mistake of fact cases would be more relaxed since an unreasonable act performed without intent could result in criminal liability. The resultant effect would be contrary to *In re Winship*, 397 U.S. 358 (1970), which found that due process required proof beyond a reasonable doubt of every element of an offense.

are as he supposes them to be, no crime is being committed. The belief that the umbrella is his own makes it impossible for him to have formed the requisite intent to steal another's umbrella. Other examples of mistake of fact include one who enters upon land in the mistaken belief it is his own,[5] or a person who destroys a survey marker mistaking it for an ordinary rock.[6] A mistake of fact, then, is where one makes an erroneous perception of the facts which actually exist.

The reason Bougneit's theory is not a mistake of fact defense is best explained by Jerome Hall in his article *Ignorance and Mistake in Criminal Law,* 33 Indiana L.J. (1957). Hall calls mistake of fact a "factual error" which is defined in criminal law as a common sense version of the philosopher's definition that "all error consists of taking for real what is mere appearance." The key is that real facts are *already* in existence. In Hall's analysis, a mistake of fact exists if: (1) The facts exist; (2) The sense impressions of facts are different from the real facts; (3) The impressions fit the facts, and (4) The erroneous impressions are accepted as true.

The umbrella example fits Hall's analysis. The facts are that the actor had placed his own similar umbrella in approximately the same location. It was the actor's impression that the umbrella he took was his own. This impression fits the facts because the umbrellas were similar and located in the same place. The impressions were accepted as true by the actor because of the fact that he did own a similar umbrella and had left it where he subsequently took the wrong one.

By placing the umbrella example within Hall's analysis, we are able to see how the actor's opinion is caused by the congruent fact situation thus rendering him incapa-

[5] 5 Wisconsin Legislative Council Reports, 35–36 (1953).

[6] Hall, *Ignorance and Mistake in Criminal Law,* 33 Indiana L.J. 1 (1957).

ble of forming intent to steal if his story is believed by the jury. The same analysis can be used with parallel success in the other examples previously cited.

When we apply Bougneit's theory to the analysis, we do not meet with the same success. The fact that existed was Fick's position or location. Bougneit's sense impression was the same as that which actually existed. It was not a different sense impression as is the case in the umbrella example. Bougneit did not draw an incorrect impression of Fick's actual position. The third factor in Hall's analysis, whether Bougneit's impressions fit the actual facts, is not applicable because he did not mistake the fact of position. Likewise, the fourth factor, whether the erroneous impressions are asserted as true, is also not applicable because no erroneous impressions of the actual facts existed.

The mistake Bougneit made was not an error in the factual situation. It was an error as to a future fact situation which would take place when the trigger was going to be squeezed. Based on the actual facts, Bougneit assumed he would miss Fick when the trigger was squeezed. He guessed wrong. His assumption was a voluntary deduction from a known fact situation which assumed the existence of certain facts seconds later. As Aristotle once cautioned, behavior in ignorance of the facts is *involuntary*.[7] Bougneit's actions were the result of a voluntary assumption based upon the facts as everybody knew them to be, assuming Bougneit's story is true. His wrong guess as to the future fact led to the shooting. However, facts do not exist in the future —they exist only in the present. We note in the civil area that an act done with knowledge that a fact cannot be determined with certainty until some future date is not done under a mistake of fact but is instead a mistake of judgment. *Application of Corn Exchange Bank*

---

[7] *Id.* at 4.

*Trust Co.*, 87 N.Y.S.2d 675, 678 (1948). A fact is that which has taken place, not what might or might not have taken place. *Churchill v. Meade*, 92 Or. 626, 182 P. 368, 371 (1919). Bougneit made an erroneous deduction from the actual facts.

Since there was no difference between the facts as they actually existed and his belief in what the facts were at the time, there was no mistake as to the fact of Fick's position. Bougneit's theory of defense was, therefore, not a defense of mistake, and he was not entitled to a mistake of fact instruction. Rather, Bougneit's theory is that he made a voluntary guess based on known facts, and he guessed wrong. This, in itself, is a viable defense to the element of intent, but it is not a defense of mistake. It is more properly classified as a "but I didn't mean to" defense. *See Morrissette v. United States*, 342 U.S. 246, 250–51 (1952). We conclude the mistake of fact defense is not applicable, and the trial court properly refused to so instruct.

Bougneit next argues that the court erred in giving an instruction regarding the loss of the privilege of self-defense. The jury was instructed that if one provokes an attack, he cannot claim the privilege of self-defense. The instruction challenged incorporates sec. 939.48(2)(a), Stats., which states in part:

(2) Provocation affects the privilege of self-defense as follows:
(a) *A person who engages in unlawful conduct of a type likely to provoke others to attack him and thereby does provoke an attack is not entitled to claim the privilege of self-defense* against such attack, except when the attack which ensues is of a type causing him to reasonably believe that he is in imminent danger of death or great bodily harm. . . . [Emphasis added.]

Bougneit claims first that he committed no conduct which can be classified as either tortious or expressly prohibited by criminal law or both. This argument lacks merit. Bougneit made several loud and verbally abusive comments toward the women which we would construe as verbal sexual harassment. He made a grabbing motion toward the rear of one of the ladies and indicated he wanted to get in her pants. When asked to apologize, he instead taunted the victim by asking him if he was big enough to make him and asking him outside for a fight. These are fighting words and were made in a loud and boisterous manner. Fighting words are those words which tend to cause or provoke a disturbance. *Chaplinsky v. New Hampshire,* 315 U.S. 568, 573–74 (1942). Bougneit's actions fit into the offense of disorderly conduct which is defined in pertinent part as follows:

947.01 Disorderly conduct. Whoever does any of the following is guilty of a Class B misdemeanor:
(1) In a public or private place engages in violent, *abusive, indecent, profane, boisterous, unreasonably loud,* or otherwise disorderly conduct under circumstances in which such conduct tends to cause or provoke a disturbance; . . . . [Emphasis added.]

We conclude that Bougneit's conduct was expressly prohibited by criminal law, and it was of the kind which would provoke others to attack him. He invited Fick to fight and, in fact, taunted him with fighting words. He disparaged Fick's friends by offensive and annoying words derisive in character. The test, as to whether words tend to cause or provoke a disturbance and thus become fighting words, is whether men of common intelligence would understand that the words would probably cause an average addressee to fight. *Chaplinsky, supra,* at 573. The test has been met here. The words

were intended to provoke a disturbance contrary to criminal law. The instruction was correctly given.

Bougneit next raises a sufficiency of the evidence argument. He claims that he was attempting to escape the victim and was not the aggressor. He argues that the testimony is clear that he fired only in self-defense, and he intended only to scare the victim not shoot him.

This court can overturn a jury verdict "only if, viewing the evidence most favorable to the state and the conviction, it is inherently and patently incredible, or so lacking in probative value that no jury could have found guilt beyond a reasonable doubt." (Footnote omitted.) *Fells v. State,* 65 Wis.2d 525, 529, 223 N.W.2d 507, 510 (1974). Moreover, the credibility of the witnesses is to be decided by the trier of fact. *State v. Powers,* 66 Wis.2d 84, 93, 224 N.W.2d 206, 210 (1974).

Seldom will a murder or an attempted murder case come before the court in which the state can establish intent by direct proof. Intent can, however, be established by an act, conduct and inferences fairly deductible from the circumstances. *Gibson v. State,* 55 Wis.2d 110, 115, 197 N.W.2d 813, 817 (1972).

Viewing the evidence most favorable to the verdict, we find that there is sufficient evidence of Bougneit's guilt.[8] There is sufficient evidence that Bougneit's conduct inside the restaurant was calculated to provoke a fight. It is undisputed that once outside, Bougneit removed a shotgun from his trunk and fired two shots

---

[8] In *Jackson v. Virginia,* 443 U.S. 307 (1979), the United States Supreme Court held that the federal district courts, in considering an application for federal habeas corpus, must review a trial record to determine if the state produced evidence of the defendant's guilt beyond a reasonable doubt. Although we do not adopt *Jackson v. Virginia,* we point out that we are convinced the state proved Bougneit's guilt beyond a reasonable doubt.

over Fick's head. It is also undisputed that Bougneit lowered his gun to a horizontal plane. There is sufficient evidence to believe that when he lowered the gun to a horizontal plane, he directed the gun towards Fick rather than to his side. There is also sufficient evidence that he told Fick he was going to blow him away before firing. This evidence has sound probative value. It is not inherently and patently incredible. A jury could definitely believe beyond a reasonable doubt that Bougneit had no privilege of self-defense and that he intended to kill Fick but failed.

Bougneit's final argument is that prosecutorial misconduct resulted in denying him a fair trial. The first comment was during questioning of Bougneit by the prosecutor. The colloquy is as follows:

Q It's your testimony you had four to five to six beers after the shooting?

A Well, I would say I probably had three, four, after the shooting.

Q Isn't it a fact that you consumed that alcohol after the shooting so you could use that as a defense? (Objection.)

The claim is that the prosecutor suggested Bougneit tried to get drunk after the incident so that he could say he was intoxicated at the time of the altercation and use it as a defense. This, Bougneit contends, is a question calculated to inflame and mislead the jury since it portrays Bougneit as trying to concoct a defense which in fact was never raised or even suggested by Bougneit.

We are not persuaded by Bougneit's argument. The record reveals that much more went on than the simple question and answer statement pointed out by the defendant. After the objection, the following took place:

MR. MASON: The record should reflect also then that I object to the question on the basis that it calls for a legal conclusion as to what constitutes a legal defense under the law of the State of Wisconsin. I don't believe this witness is competent to answer.

THE COURT: Could we have the questions read back. [Last question read back by the reporter.]

THE COURT: The Court will take the question to ask the defendant for a state of mind at the time he was consuming, rather than for the actual legal defense, and we are going to overrule it. You may answer the question.

A   As far as what—all right, what was the question again, for legal defense or something like that?

Q   No, why did you consume the alcohol after the incident, the shooting?

A   Because I was all shook up and upset with just what had happened. I couldn't believe it. I just—I mean, I just couldn't believe it. So I had a few beers.

The record clearly shows Bougneit answered as to his state of mind following the incident; he did not answer whether he drank because he was trying to set up a defense. Moreover, the question by the prosecutor was intended to go to Bougneit's state of mind and not to the question of whether a defense was concocted. We discern no prejudice to the case because of the rephrasing of the question by the court and the resultant answers of the defendant. We also note that, following the court's rephrasing, no objection was interposed, leaving us to conclude that the question as rephrased met with no apparent disapproval by the defendant. The comment, therefore, was not prejudicial.

The second comment by the prosecutor, allegedly prejudicial, came at the time of final arguments. The prosecutor said:

The defendant doesn't want to have you believe it happened that way. Because it makes him look like the aggressor, the provoker. And if the man is the provoker, if he provokes an attack, he can't claim the use of a shotgun to self-defense.

Admittedly, the comment is an improper statement of the law. Counsel is not permitted to make statements of the law which are of dubious correctness. *State v.*

*Lenarchick,* 74 Wis.2d 425, 459, 247 N.W.2d 80, 98 (1976).

We observe, however, that defense counsel immediately objected to the statement, and the court immediately responded stating:

The jury will be reminded we will instruct them, the court will instruct them on the law of self-defense.

Additionally, the court later fully instructed the jury on the privilege of self-defense including the effect of provocation on the privilege and the regaining of the privilege by withdrawal. Also, prior to the giving of the final arguments, the trial court informed the jury that the instructions would be given by the court following the final remarks of counsel and that the instructions would supersede any comments on the law made by counsel. We believe the remark, although a misstatement, was cured by the trial court's admonitions and instructions.

Moreover, there is nothing in this record which suggests bad faith on the prosecutor's part. Only two comments are alleged to be prejudicial. No pattern of prosecutorial impropriety is shown. *Hoppe v. State,* 74 Wis.2d 107, 120, 246 N.W.2d 122, 130 (1976).

Bougneit also claims he should be allowed a new trial in the interests of justice. We do not believe justice miscarried. The jury was presented with differing interpretations of the facts. It was their choice to decide whether Bougneit's version was credible. They rejected the defense. We will not grant a new trial in the interests of justice unless it can reasonably be concluded that a new trial under optimum circumstances would result in an acquittal. *Hoppe v. State, supra,* at 122, 246 N.W.2d at 131. We find nothing in the record to warrant such a conclusion.

*By the Court.*—Judgment affirmed.