STATE of Utah, Plaintiff and Appellee,

v.

Robert J. BOYATT, Defendant and Appellant.

No. 920577–CA.

Court of Appeals of Utah.

May 7, 1993.

Curtis Nesset, Salt Lake City, for defendant and appellant.

Jan Graham and Charlene Barlow, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, JACKSON and RUSSON, JJ.

JACKSON, Judge:

Defendant, Robert J. Boyatt, appeals from his conviction of aggravated burglary, a first degree felony, in violation of Utah Code Ann. § 76–6–203 (1990). We affirm.

## FACTS

On September 21, 1991, at about 11:00 p.m., Mr. Shawn Gillard was sitting in the living room of his home watching television. He saw a man coming up his sidewalk and to Gillard's surprise, the man came into his home without knocking. As Gillard walked toward the door, the man grabbed Gillard and started scuffling with him. The man was wearing a ski mask. Boyatt entered the home just behind the first man. Boyatt was carrying a pick handle. The three scuffled together until Gillard propelled all three onto the front porch. The man in the mask ran away and Gillard and Boyatt continued to fight until a neighbor came over to assist Gillard. The police were called and Boyatt was taken into custody.

When Boyatt was searched, the police discovered a knife with a permanently extended blade and a roll of duct tape in his coat pocket. Boyatt was wearing a ban-

danna around his neck. A blue hat was found in Gillard's living room, but Boyatt denied it was his.

Boyatt was charged with one count of aggravated burglary, a first degree felony, in violation of Utah Code Ann. § 76–6–203 (1990). A jury found Boyatt guilty and the trial judge sentenced him to five years to life in the Utah State Prison and fined him $10,000.

## ISSUES

Boyatt appeals his conviction, claiming (1) the trial court improperly failed to remove seven jurors for cause; (2) the trial court improperly questioned a witness; (3) his counsel provided ineffective assistance; and (4) the prosecutor committed misconduct in his closing statement.

## ANALYSIS

### REMOVAL OF JURORS FOR CAUSE

Boyatt asserts the trial court abused its discretion in denying his motion to excuse for cause certain prospective jurors who had been victims of similar crimes. A motion to dismiss prospective jurors for cause is within the sound discretion of the trial court. *State v. Woolley,* 810 P.2d 440, 442 (Utah App.1991), *cert. denied,* 826 P.2d 651 (Utah 1991); *State v. Gotschall,* 782 P.2d 459, 462 (Utah 1989). However, the trial court must adequately probe a juror's potential bias when that juror's responses or other facts suggest a potential bias. *Woolley,* 810 P.2d at 444. The trial court does not abuse its discretion when, after sufficient questioning, the suggestion of bias has been dispelled. *Id.* at 442.

During voir dire, the trial judge asked if any of the prospective jurors had been victims of any criminal offense. Ten of the jurors indicated they had been victims of some type of burglary. The court then questioned each juror about his or her experience, including the type of burglary involved, whether the juror was present at the time of the burglary, and whether the case had been resolved. The trial court then asked the venire as a group if any

harbored ill will toward the criminal justice system because of the burglaries. None responded affirmatively. The trial court then asked the potential jurors if, as a result of the burglary they had experienced, they felt they could not be fair and impartial in this case. Again, none responded affirmatively.

At this point, defense counsel made a motion off the record to challenge for cause all jurors who had been victims of burglaries. The trial court indicated to defense counsel that it would not dismiss jurors simply because they were victims of a similar crime. The court then explained to the jurors what constitutes burglary and asked whether considering the explanation of the legal elements of burglary, and considering the fact that they had been victims of a burglary, anyone would have difficulty determining the guilt or innocence of someone else accused of burglary. No hand was raised.

Counsel were invited to ask any additional questions and defense counsel asked for further clarification concerning the burglary of Juror Wight's home. The trial court again asked if any of the potential jurors had confronted the burglars. No one responded affirmatively. The trial court then requested that each juror "[p]ut a mirror in front of your face and ask yourself if you were accused of an offense such as that before the court, is there any reason that you would not want someone of your mindset and disposition to sit in judgment of you?" No juror responded affirmatively. The trial court later asked if there was any reason that would cause any of the jurors to feel they should not act as a juror in the case. No hand was raised.

The trial court asked if counsel wanted to address any further questions to the potential jurors. Both counsel declined. Counsel then passed the jury for cause, subject to the earlier motion to challenge.

Defense counsel then placed on the record a challenge for cause of the jurors who had been victims of burglaries. The trial court stated that it "could not excuse persons who had been the subject of a burgla-

ry on the basis of that fact, alone. It had to be somebody that rose to the level of prejudice in that case."

■ A potential juror's prior victimization does not mandate the juror be removed for cause. *Woolley*, 810 P.2d at 444. Once a juror states he or she has been the victim of a similar crime, the trial judge or trial counsel is required to address the potential bias through rehabilitative inquiry until the potential bias is rebutted. *Woolley*, 810 P.2d at 443–44. This is exactly what the trial judge did in this case. The trial judge asked nine questions of the potential jurors concerning their prior victimization.[1] These questions more than adequately showed the prospective juror's victimization would not affect the jurors' impartiality. If any juror had answered affirmatively to any of the questions presented, the trial judge would have been obligated to ask further questions to insure rehabilitation. However, no juror indicated an affirmative response to any of the trial judge's questions probing the potential bias. Indeed, it is difficult to imagine anything more the trial judge could have done to insure the potential bias was rebutted. Accordingly, the trial court did not abuse its discretion in refusing to dismiss the prospective jurors for cause.

### QUESTION BY TRIAL COURT

■ Boyatt claims that the judge "questioned the veracity of the defendant, sacrificed the appearance of impartiality required of a trial court, and indicated bias ... against the defendant" when the judge asked a question (set forth below) of Gillard during rebuttal. Rule 614 of the Utah Rules of Evidence allows the court to "interrogate witnesses, whether called by itself or by a party." It is within the judge's prerogative to "ask whatever questions of witnesses as in his judgment is necessary or desirable to clarify, explain or add to the evidence as it relates to the disputed is-

sues." *State v. Mellen*, 583 P.2d 46, 48 (Utah 1978).

Gillard testified that he saw a man "walking" to his porch, and when the man entered Gillard's home, Boyatt entered "just like a second behind." Boyatt testified that he chased the first man into the Gillard's home and that the first man "ran" into Gillard's home. On rebuttal, in response to the prosecutor's questions, Gillard stated that the first man walked up to his house at a "normal walk, not hesitating at all, ... purposefully coming right to the door." After defense counsel cross-examined Gillard on rebuttal, the trial judge asked "Did you have any impression that the first gentleman coming in your home as [sic] fleeing from anyone else?" Gillard relied, "No, he looked quite normal as if someone was just coming up to knock on your door, until he walked in."

From Gillard's testimony before being questioned by the trial judge, it is unclear whether the first man approached his home walking in a manner suggesting that he was fleeing from someone. Was he looking over his shoulder as he walked up to Gillard's home? Was he walking quickly or rather slowly? The terms "normal walk" and "purposefully" do not suggest how fast he was moving or whether it appeared he was being pursued. Thus, the trial court's question was necessary to "clarify, explain or add to the evidence as it relates to the disputed issues." *Id.* Accordingly, the trial court's question was proper.

### INEFFECTIVE ASSISTANCE OF COUNSEL

■ Boyatt asserts the ineffectiveness of his trial counsel prejudiced his case. During direct examination of Boyatt, defense counsel asked whether he had any prior convictions, to which Boyatt responded that he had previously been convicted of possession of a stolen vehicle.[2] Boyatt as-

---

**1.** Although we point out the number of questions asked, the substance of the questions and the responses provided are determinative, not the number of questions asked. If a trial judge can formulate one question that properly satis-

fies the trial judge that the jurors are impartial, one is all that is required to successfully rehabilitate potential bias.

**2.** It is unclear why defense counsel failed to file a pretrial motion to suppress the evidence of

serts that because his credibility was at issue in this case, the fact of his prior conviction caused the jury to disbelieve his story.

 In order to show ineffective assistance of counsel, Boyatt must "show that counsel's performance was deficient." *State v. Templin*, 805 P.2d 182, 186 (Utah 1990) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Boyatt must also show that counsel's errors prejudiced his case by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Gardner*, 844 P.2d 293, 297 (Utah 1993) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068). If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *State v. Gardner*, 789 P.2d 273, 288 (Utah 1989), *cert. denied*, 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 965 (1990). When a question of trial counsel ineffectiveness is raised for the first time on appeal and the review is confined to the trial court record, the question of ineffectiveness of counsel is a matter of law, to be reviewed for correctness. *State v. Ellifritz*, 835 P.2d 170, 175 (Utah App.1992); *State v. Johnson*, 823 P.2d 484, 487 (Utah App.1991).

We believe that even if the evidence of Boyatt's prior conviction had not been introduced, no reasonable probability exists that the jury would have reached a different decision in this case, given the inconsistencies in and implausibility of Boyatt's testimony. For instance, Boyatt's story about chasing his attacker into Gillard's home is very different from Gillard's testimony about the two entering his home. Boyatt testified on numerous occasions that the first man "ran" into Gillard's home. However, Gillard testified that the first man "walked" into his home. Boyatt testified that he was pursuing his attacker, not Gillard. However, Gillard testified that Boyatt continued to scuffle with him after the first man ran away. Additionally, Boy-

att admitted that he never tried to explain to Gillard that he was trying to subdue the masked attacker, not Gillard.

Boyatt also claimed he did not recognize a blue hat found in Gillard's home after the attack. However, Mike Yagues, a friend of Boyatt's, testified that he had seen Boyatt wearing the blue hat on the night in question.

Officer Johnson testified that when he questioned Boyatt at the scene, Boyatt stated that a friend of his might have gone into Gillard's home, but that he did not. At trial, Boyatt testified that he told Officer Johnson the following story: At about 11:00 p.m. on the night in question, Boyatt and a friend, Mike Yagues, were attacked by seven armed gang members. Boyatt said he was struck in the ribs with a pick handle, which he then grabbed from his attacker's hands. Boyatt stated that he chased his attacker down the street and into Gillard's home. Officer Johnson denied Boyatt ever related this story to him.

Officer Johnson also testified that Boyatt was wearing a bandanna in such a manner that Boyatt could have covered his face. Boyatt denied that he was wearing the bandanna in such a manner and further testified that he was wearing the bandanna because it was a cold night. However, Gillard testified that it was a warm night.

Given these inconsistencies, it is apparent that a jury could disbelieve Boyatt's story even without considering the fact that he had a prior felony conviction. Further, the whole story concerning Boyatt being attacked by seven armed gang members and successfully fighting off the attack could appear implausible to a jury. Accordingly, no reasonable probability exists that the introduction of Boyatt's prior felony conviction, even if in error, caused the jury to reach a different decision.

## PROSECUTORIAL MISCONDUCT

 Boyatt asserts the prosecutor committed misconduct in his closing argument by misstating the law. The test to

Boyatt's prior conviction and even more unclear why defense counsel questioned Boyatt about

the prior conviction on direct examination in light of Rule 609 of the Utah Rules of Evidence.

determine whether a prosecutor's remarks have deprived a defendant of a fair trial and merit a reversal in a criminal case is "did the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict, and were they, under the circumstances of the particular case, probably influenced by those remarks." *State v. Troy*, 688 P.2d 483, 486 (Utah 1984).

In his closing argument, the prosecutor stated:

> The defense says, "well, my client is only guilty of criminal trespass. It is a lesser included offense." Well, isn't that nice that he is willing to concede that he is guilty of criminal trespass, but, you know, he committed criminal trespass by simply going into the yard of Mr. Gillard. If he had gone out into the back yard or gone into the front yard without permission or authorization, that is criminal trespass. But what makes this aggravated burglary, is when he enters Mr. Gillard's home. The sanctity of the home makes this more than simply trespass. It now makes it aggravated burglary.

Defense counsel immediately objected to the prosecutor's statement on the grounds that it was a misstatement of the law. The trial court ruled that the prosecutor had merely provided an incomplete statement of the law and subsequently provided the jury with a complete instruction on the law. Further, the trial court instructed the jurors that they were obliged to follow the law as stated by the court. Under the circumstances it is not probable that the defense counsel's remarks influenced the jurors. Accordingly, the remarks made by the prosecutor do not merit reversal in this case.

## CONCLUSION

The trial court properly refused to remove prospective jurors for cause merely because they were victims of a crime similar to the one at issue in this case. The trial court also acted properly in asking a witness a question in order to clarify the evidence. Even if defense counsel had

properly prevented the introduction of Boyatt's prior felony conviction, no reasonable probability exists that the jury would have reached a different decision in this case. Finally, the prosecutor's incomplete statement of the law did not influence the jury. Accordingly, we affirm Boyatt's conviction.

BILLINGS and RUSSON, JJ., concur.