STATE of Utah, Plaintiff and Appellee,

v.

Charlotte M. LONGSHAW, Defendant
and Appellant.

No. 960746–CA.

Court of Appeals of Utah.

June 11, 1998.

Jerome H. Mooney and Wendy M. Lewis, Salt Lake City, for Appellant.

Jan Graham and Thomas B. Brunker, Salt Lake City, for Appellee.

Before WILKINS, BILLINGS and ORME, JJ.

## OPINION

ORME, Judge:

Defendant Charlotte Marlene Longshaw, who shot and killed a mourner at her brother's funeral, appeals her conviction for murder, a first degree felony, in violation of Utah Code Ann. § 76-5-203 (Supp.1997). We conclude that the trial court properly denied her motion for a new trial, which was based both upon claims of prosecutorial misconduct and that the evidence was insufficient to support the jury's verdict. We therefore affirm.

## FACTS

On April 3, 1995, Longshaw discovered the body of her brother, Aaron Grueber, who had died from a drug overdose. At the time of his death, Aaron was married to Terresa Grueber, from whom he was estranged. At least to some degree, Aaron's family blamed Terresa for Aaron's death. Several days after Aaron's death, his viewing and funeral were held at the Memorial Estates Funeral Home. The viewing was attended by Terresa and members of her family, including Terry Stewart, Terresa's stepfather. Stewart's presence at the viewing reportedly alarmed some Grueber family members because they

believed he was carrying a gun. The Gruebers reported the matter to the police and discussed among themselves security concerns for the funeral the following day. Indeed, the funeral was not to go smoothly.

On the day of the funeral, Longshaw was greatly distressed and spent the hour prior to the funeral laying across her brother's corpse, kissing it. Longshaw was also heard to exclaim, "Just put me in with [Aaron] and close the casket so I can go with him." Shortly before the funeral began, Terresa Grueber arrived, again accompanied by Stewart.

John Sloan, another brother of Longshaw, also attended the funeral. Evidencing the strained relations between the Gruebers and Terresa's family, Stewart and Sloan exchanged words, prompting a fight—of all things—to break out in the funeral parlor. Stewart and Sloan grappled with each other for a short time before Longshaw approached them, drew a .22 caliber handgun she had concealed in her waistband, told Stewart to "back off," and then shot him in the side of the chest. The fatal bullet struck Stewart in the ribs, then tore through his diaphragm, liver, lungs, and heart, killing him. After shooting Stewart, Longshaw returned the pistol to her waistband and left the funeral home for the parking lot, where she smoked a cigarette until the police arrived. When the police approached her, Longshaw lifted her shirt to show them the gun and was then taken into custody. She was charged with murder.

At trial, Longshaw premised her defense largely on the claims that she was extremely emotionally distraught at the time of the shooting and that she was intoxicated from taking Valium and Soma before the funeral. She also presented evidence that she suffered from mental illness and that she shot Stewart in defense of herself and her brother. At the conclusion of the seven-day trial, a jury convicted Longshaw of murder. Alleging prosecutorial misconduct, Longshaw filed a motion for a new trial. The trial court denied the motion and sentenced Longshaw to prison for five years to life.

## ISSUES

Longshaw raises two arguments on appeal. First, she contends that the prosecution made prejudicial statements about her defense of intoxication during its closing argument and that the trial court erred in denying her motion for a new trial, which was based on this alleged prosecutorial misconduct. Second, Longshaw argues that there was insufficient evidence to convict her, beyond a reasonable doubt, of murder.

## PROSECUTORIAL MISCONDUCT

■ Longshaw contends that the prosecutor made "substantial and prejudicial" misstatements during the rebuttal portion of his closing argument. Specifically, she argues that the prosecutor misstated Utah law regarding voluntary intoxication and its interplay with the elements of manslaughter and negligent homicide. We address Longshaw's prosecutorial misconduct argument under the following standard of review:

> In determining whether a given statement constitutes prosecutorial misconduct, the statement must be viewed in light of the totality of the evidence presented at trial. Further, because the trial court is in the best position to determine the impact of a statement upon the proceedings, its rulings . . . will not be overturned absent an abuse of discretion.

*State v. Cummins,* 839 P.2d 848, 852 (Utah Ct.App.1992), *cert. denied,* 853 P.2d 897 (Utah 1993). *Accord State v. Valdez,* 30 Utah 2d 54, 60, 513 P.2d 422, 426 (1973) ("If there be no abuse of . . . discretion and substantial justice appears to have been done, the appellate court will not reverse the judgment.").

■ Longshaw's prosecutorial misconduct claim stems from the following exchange during the State's rebuttal closing argument, in which the prosecutor referred to a chart used by defense counsel which mapped out the crimes on which the jury was instructed and each crime's elements:

> Mr. Christensen[, the prosecuting attorney]: . . . . Mr. Mooney[, counsel for defendant,] fails on his diagram to mention what voluntary intoxication also does with re-

gard to criminally negligent types of homicide. Basically it does away with negligent homicide all together. Even when you read the instruction on that—

Mr. Mooney: I am going to object to that, your Honor.

The Court: Excuse me?

Mr. Mooney: I am going to object. That's not the law.

Mr. Christensen: On the contrary, it is.

The Court: Your objection?

Mr. Mooney: My objection is the statement that's been made, it misrepresents the law.

The Court: Members of the jury, as I have told you before, arguments of counsel and statements of counsel are not evidence in this matter. You are to be governed by the law as provided to you and as read to you. If your interpretation of the law is different than what Mr. Christensen is arguing to you, you go by what is contained in the Jury Instructions.

Mr. Christensen: Let's clear that up. Jury Instruction No. 18, I'll read it,

"Voluntary intoxication shall not be a defense to a criminal charge unless such intoxication negates the existence of the mental state which is an element of the offense. However, if recklessness"—manslaughter here is recklessness—"or criminal negligence establishes an element of an offense and the actor is unaware of the risk because of involuntary [sic] intoxication, her awareness is immaterial for a prosecution for that offense."

Again ladies and gentlemen, I have correctly stated the law to you. And negligent homicide for voluntary intoxication doesn't apply. And the first element of manslaughter, her recklessness doesn't apply.[1]

Longshaw claims these remarks constitute prosecutorial misconduct. We have enunciated a two-part test whereby we

> reverse on the basis of prosecutorial misconduct only if defendant has shown that ■ "the actions or remarks of [prosecuting] counsel call to the attention of the jury a matter it would not be justified in considering in determining its verdict and, if so, ■ under the circumstances of the particular case, whether the error is substantial and prejudicial such that there is a reasonable likelihood that, in its absence, there would have been a more favorable result...."

*State v. Cummins,* 839 P.2d 848, 852 (Utah Ct.App.1992) (quoting *State v. Peters,* 796 P.2d 708, 712 (Utah Ct.App.1990)), *cert. denied,* 853 P.2d 897 (Utah 1993). *Accord State v. Span,* 819 P.2d 329, 335 (Utah 1991); *State v. Boyatt,* 854 P.2d 550, 554–55 (Utah Ct.App.), *cert. denied,* 862 P.2d 1356 (Utah 1993). Longshaw contends that this two-part test has been satisfied: First, she argues that the prosecutor's statements called the jury's attention to a matter it would not be justified in considering, i.e., the inaccurate legal proposition that if Longshaw were voluntarily intoxicated, the jury could not convict her of manslaughter or negligent homicide. Second, according to Longshaw, a more favorable result would

---

1. Longshaw also contends that, as the prosecutor made this final statement, he defaced the chart used by defendant in her closing argument by crossing off both "negligent homicide" and its elements and "manslaughter" and its elements. Longshaw claims that this reinforced the conclusion the prosecutor meant for the jury to draw, namely, that if they found Longshaw was voluntarily intoxicated, then they could not find her guilty of manslaughter or negligent homicide. However, nothing in the transcript evidences these alleged actions by the prosecutor, and Longshaw failed to make the purportedly defaced exhibit part of the record.

> When a defendant predicates error to [an appellate court], he has the duty and responsibility of supporting such allegation by an adequate

record. Absent that record, defendant's assignment of error stands as a unilateral allegation which the review[ing] court has no power to determine. [An appellate court] simply cannot rule on a question which depends for its existence upon alleged facts unsupported by the record.

*State v. Wulffenstein,* 657 P.2d 289, 293 (Utah 1982), *cert. denied,* 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983). Consequently, in the face of "an [in]adequate record on appeal, [we] must assume the regularity of the proceedings below." *State v. Miller,* 718 P.2d 403, 405 (Utah 1986) (per curiam). *Accord State v. Blubaugh,* 904 P.2d 688, 699 (Utah Ct.App.1995), *cert. denied,* 913 P.2d 749 (Utah 1996).

have been reasonably likely if the prosecutor had not misled the jury into believing a finding of voluntary intoxication precluded a verdict of manslaughter or negligent homicide.

### a. Prosecutorial Misstatement

The State concedes in its brief that the prosecutor's first statement—the one that prompted defense counsel's objection—was a misstatement of the law regarding voluntary intoxication. The State contends, however, that the prosecutor's post-objection statements served to correct his prior mistake. We disagree. Considering the prosecutor's first statement, we think the jury could reasonably have interpreted the prosecutor's convoluted post-objection statements—namely, that "negligent homicide for voluntary intoxication doesn't apply" and that "the first element of manslaughter, her recklessness doesn't apply"—to reinforce, rather than dispel, the prosecutor's earlier, clear-cut, misstatement of the law. Thus, we conclude that, in misstating the law of voluntary intoxication, the prosecutor called to the jury's attention a matter it would not be justified in considering, thereby satisfying the first step of the prosecutorial misconduct test. *Cf. State v. Haston,* 811 P.2d 929, 933 (Utah Ct.App.1991) (concluding that statement in closing argument by prosecutor, which State conceded was misstatement of law of intoxication, satisfied first part of prosecutorial misconduct test), *rev'd on other grounds,* 846 P.2d 1276 (Utah 1993) (per curiam).

### b. Prejudice

We next face the second step of the prosecutorial misconduct test: whether, under the facts of this case, the error was " 'substantial and prejudicial such that there is a reasonable likelihood that, in its absence, there would have been a more favorable result.' " *Cummins,* 839 P.2d at 852 (quoting *State v. Peters,* 796 P.2d 708, 712 (Utah Ct.App. 1990)).

#### (1) Curative admonition

In considering the effect of the prosecutor's misstatement, we first address the trial court's response to defendant's objection, which was to inform the jury that counsel's arguments were not evidence; that the jury was to be governed by the law as stated in the jury instructions; and that where the instructions differed from the prosecutor's argument, the jury must apply the law as stated in the instructions. Longshaw contends that the trial court's statements to the jury were insufficient because the trial court did not rule that the prosecutor misstated the law and did not explicitly correct the prosecutor's misstatement.

The facts of this case are similar to those of *State v. Haston,* 811 P.2d 929 (Utah Ct. App.1991). *Haston* involved a claim of prosecutorial misconduct stemming from the prosecutor's closing-argument remarks about voluntary intoxication—remarks that misstated the law. *See id.* at 933. In addressing the trial court's response to defense counsel's objection to the remarks, we stated:

Although the trial judge failed to expressly rule on whether the prosecutor misstated the law, the judge called the attention of the jury to the written instructions. . . . The court's response to defense counsel's objection did not directly contradict the prosecutor or correct his misstatement, as may have been appropriate. However, implicit in the court's response to the objection was the assurance that the written instructions, not the prosecutor's comments, accurately stated the law and should be the jury's sole referent in considering the affirmative defense of intoxication.

*Id.* (citation omitted), *rev'd on other grounds,* 846 P.2d 1276 (Utah 1993) (per curiam).

We reached a similar conclusion in *State v. Boyatt,* 854 P.2d 550 (Utah Ct.App.1993), another case in which the defendant alleged prosecutorial misconduct due to the prosecutor's misstatement of the law during closing argument. We found no prosecutorial misconduct because the trial court provided the jury with a complete instruction on the law and directed the jurors to follow the law as stated by the court. *See id.* at 555. Likewise, in *State v. Hovater,* 914 P.2d 37 (Utah 1996), the Utah Supreme Court concluded that the trial court "sufficiently corrected" any potential error resulting from a prosecu-

tor's misstatement of the law. *Id.* at 45. In that case, the trial court instructed the jury on the substantive law, that counsel's statements were not evidence, and that it was the court's responsibility to explain the applicable law, not counsel's. *See id.*

■ The foregoing authorities stand for the proposition that, as explained in *Hovater,* "[m]isstatements of the law do not prejudice a defendant where the error has been satisfactorily corrected." *Id.* at 44. *Cf. State v. Hopkins,* 782 P.2d 475, 479 (Utah 1989) (stating that any impropriety resulting from prosecutor's closing-argument remarks was rendered harmless by court's jury instructions); *State v. Hall,* 671 P.2d 201, 202–03 (Utah 1983) (per curiam) (concluding that prosecutor's misstatement of law in closing argument did not prejudice defendant because trial court admonished jury to disregard statement, court properly instructed jury, and court emphasized that instructions, not counsels' comments, governed). Accordingly, we conclude that the trial court's statement to

the jury in response to defense counsel's objection satisfactorily addressed the prosecutor's misstatement of the law. While it would undoubtedly have been preferable for the trial court to explicitly correct the prosecutor's misstatement, it was not prejudicially erroneous for the court to fail to do so here. *See United States v. Hutson,* 821 F.2d 1015, 1021 (5th Cir.1987). The trial court appropriately told the jury that it was to be governed by the jury instructions and not by the attorneys' arguments.[2]

### (2) Accuracy of relevant instructions

The trial court appropriately directed the jury to heed the law as stated in the jury instructions over the law as stated by the prosecutor. Thus, we must necessarily consider the correctness of the court's pertinent instructions. *See Haston,* 811 P.2d at 933.

Jury instruction eighteen was identical to the language of Utah Code Ann. § 76-2-306 (1995) and therefore properly stated the law regarding voluntary intoxication.[3] *Cf. State*

---

2. While the general efficacy of curative instructions has recently been debated by our Supreme Court, *see State v. Harmon,* 956 P.2d 262, 271-72 (1998); *id.* at 278-79 (Durham, J., concurring), Utah is not alone in concluding that a trial court's general admonition to heed the jury instructions can satisfactorily correct a prosecutor's misstatement of law. *See, e.g., United States v. Levine,* 80 F.3d 129, 135–36 (5th Cir.) (concluding prejudicial effect of prosecutor's misstatement of law "was minimized by two instructions by the court, the oral admonishment [to follow the jury instructions,] and the written supplemental instructions"), *cert. denied,* — U.S. ——, 117 S.Ct. 83, 136 L.Ed.2d 40 (1996); *United States v. Ratchford,* 942 F.2d 702, 706 (10th Cir.1991) (stating that prosecutor's statement was not prejudicial in light of, *inter alia,* court's instructions to jury), *cert. denied,* 502 U.S. 1100, 112 S.Ct. 1185, 117 L.Ed.2d 427 (1992); *Girtman v. Lockhart,* 942 F.2d 468, 474 (8th Cir. 1991) ("[E]ven if the prosecutor misstates the law, such an error is harmless where, as here, '[t]he trial court properly instructed the jury to consider only the evidence, and further advised that statements and arguments of counsel are not evidence.' ") (quoting *United States v. Yancy,* 688 F.2d 70, 72 (8th Cir.1982)); *Hutson,* 821 F.2d at 1021 ("While it would have been preferable for the court to instruct on the correct law at the time of the defendant's objections [rather than merely instructing the jury that it would be governed by the law as instructed by the court, not counsel], the misstatements, viewed in the context of the entire trial, constitute harmless error."); *State v. Anaya,* 170 Ariz. 436, 442, 825

P.2d 961, 967 (1991) ("[T]he trial court promptly admonished the jury that the jury instructions correctly stated the law. A timely admonition is presumed to cure the prejudice arising from improper argument."); *State v. Kupihea,* 80 Hawai'i 307, 318, 909 P.2d 1122, 1133 (1996) (same); *People v. Rutherford,* 274 Ill.App.3d 116, 210 Ill.Dec. 599, 607, 653 N.E.2d 794, 802 ("When a prosecutor misstates the law ... in closing argument, the error is not grounds for reversal where, as here, the jury is properly instructed."), *appeal denied,* 164 Ill.2d 577, 214 Ill.Dec. 329, 660 N.E.2d 1278 (Ill.1995); *State v. Harker,* 1 Neb.App. 438, 498 N.W.2d 345, 350–51 (1993) (same); *State v. Alston,* 341 N.C. 198, 461 S.E.2d 687, 714 (1995) ("[H]ad there been a misstatement of the law by the prosecutor, any such misstatement would have been cured by the trial court's proper instructions to the jury."), *cert. denied,* 516 U.S. 1148, 116 S.Ct. 1021, 134 L.Ed.2d 100 (1996); *State v. Bougneit,* 97 Wis.2d 687, 294 N.W.2d 675, 682 (App.1980) (same).

3. Utah Code Ann. § 76-2-306 (1995) and jury instruction 18 both provide:

    Voluntary intoxication shall not be a defense to a criminal charge unless such intoxication negates the existence of the mental state which is an element of the offense; however, if recklessness or criminal negligence establishes an element of an offense and the actor is unaware of the risk because of voluntary intoxication, his unawareness is immaterial in a prosecution for that offense.

*v. Padilla,* 776 P.2d 1329, 1331 (Utah 1989) (discussing intoxication instruction and § 76–2–306). Additionally, the instructions properly set out the elements of murder, manslaughter, and negligent homicide. Again, the jury was instructed that it must follow the law as stated by the court. Assuming, as we must, that the jury did its job and applied the law set forth in the instructions rather than as mischaracterized in argument, we think it unlikely that the mischaracterization prejudiced Longshaw.

### (3) Evidence of guilt

■ Finally, step two of the prosecutorial misconduct test requires "consideration of the circumstances of the case as a whole. In making such a consideration, it is appropriate to look at the evidence of defendant's guilt." *State v. Troy,* 688 P.2d 483, 486 (Utah 1984). *Accord State v. Finlayson,* 956 P.2d 283 (Utah Ct.App.1998). Thus, " '[i]f proof of defendant's guilt is strong, the challenged conduct or remark will not be presumed prejudicial.' Likewise, in a case with less compelling proof, [an appellate court] will more closely scrutinize the conduct." *Troy,* 688 P.2d at 486 (quoting *State v. Seeger,* 4 Or. App. 336, 479 P.2d 240, 241 (1971)). We believe the evidence of Longshaw's guilt was strong, and we therefore will not presume the prosecutor's misstatements were prejudicial, especially in light of the trial court's curative admonition to the jury. Consequently, we conclude the trial court did not abuse its discretion in denying Longshaw's motion for a new trial. While the prosecutor misstated the law in his closing argument to the jury, we conclude the statement did not rise to the level of reversible misconduct considering the trial court's admonitions to the jury and the strength of the evidence against Longshaw.

### INSUFFICIENT EVIDENCE

■ Longshaw's second argument is that there was insufficient evidence to convict her of murder. Longshaw argues that the evidence did not support the murder conviction, but rather supported her assertions that she suffered from extreme emotional distress, mental illness, voluntary intoxication, and/or that she acted in defense of herself or her brother. Thus, the thrust of Longshaw's argument is that the evidence could not support a finding that she had the requisite mental state for murder.

■ Because we owe "broad deference to the fact finder, [our] power to review a jury verdict challenged on grounds of insufficient evidence is limited." *State v. Souza,* 846 P.2d 1313, 1322 (Utah Ct.App.1993). *Accord State v. Scheel,* 823 P.2d 470, 472 (Utah Ct.App.1991). We review

> the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the jury's verdict and reverse[ ] only if that evidence is so " 'inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which [she] was convicted.' "

*Souza,* 846 P.2d at 1322 (citation omitted).

■ Admittedly, contradictory evidence was presented to the jury. However, "[t]he existence of contradictory evidence or of conflicting inferences does not warrant disturbing the jury's verdict." *State v. Howell,* 649 P.2d 91, 97 (Utah 1982). Moreover, a defendant's insufficient evidence contention necessarily fails when the defendant "presumes that the jury was obligated to believe the evidence most favorable to defendant rather than that presented in opposition by the State." *Id.* Longshaw essentially makes such a presumption here.

We conclude there was ample evidence supporting, at the very least, a finding that Longshaw's actions evidenced a "depraved indifference to human life," one of the mental states which will support a murder conviction under Utah Code Ann. § 76–5–203(1)(c) (Supp.1997). Consequently, when viewed in the light most favorable to the jury's verdict, the evidence cannot be deemed "so inconclusive or inherently improbable that a jury must have entertained doubt" as to whether Longshaw committed murder. *Souza,* 846 P.2d at 1322.

## CONCLUSION

While the prosecutor's misstatement of the law in closing argument called the jury's attention to a matter it was not justified in considering, there was no substantial and prejudicial error such that a more favorable result would have been reasonably likely. Therefore, the trial court did not err in denying Longshaw's motion for a new trial based on alleged prosecutorial misconduct. Longshaw's claim of insufficient evidence likewise fails because the evidence at trial cannot be considered so inconclusive or inherently improbable that the jury must reasonably have doubted whether she committed murder. The conviction is therefore affirmed.

WILKINS, Associate P.J., and BILLINGS, J., concur.